UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SUSAN GIORDANO, as Executrix of the
ESTATE OF IDA GIORDANO,

                    Plaintiff,

    -against-

UBS, AG,

                   Defendant.

------------------------------------X

             14 Civ. 8252
             <u>OPINION</u>

A P P E A R A N C E S:



        Attorneys for Plaintiff

        ANCONA ASSOCIATES
        220 Old Country Road
        Mineola, New York 11501
        By:  Dustin A. Levine, Esq.

        Attorneys for Defendant

        GIBSON, DUNN & CRUTCHER LLP
        200 Park Avenue
        New York, NY 10166
        By:  Gabriel Herrmann, Esq.

**Sweet, D.J.**

Defendant UBS, AG ("UBS-AG" or the "Defendant") has moved pursuant to Rules 12(b)2, 12(b)6 of the Federal Rules of Civil Procedure and the common law doctrine of forum non conveniens to dismiss the complaint of plaintiff Susan Giordano, executrix of the Estate of Ida Giordano ("Giordano" or the "Plaintiff") alleging breach of fiduciary duty, malpractice, breach of contract, disgorgement, and fraud. Based upon the conclusions set forth below, the motion of UBS-AG is granted, and the complaint is dismissed.

**Prior Proceeding**

Giordano filed her complaint on October 15, 2014 containing the following allegations. Plaintiff Susan Giordano, Executrix of the Estate of Ida Giordano, resides in Queens, New York. Compl. ¶ 6. From July 2000 to May 2009, Plaintiff and the now-deceased Ida Giordano maintained a joint account with UBS in Geneva, Switzerland (the "Swiss Account"). Id. at ¶ 13; Müller Aff. ¶¶ 6-7. UBS has a 152-year history as a Swiss financial institution. Müller Aff. ¶ 3. The present-day UBS was formed in 1998, when Union Bank of Switzerland and Swiss

1

Bank Corporation merged to form a new company. Id. UBS is incorporated in and has its principal place of business in Switzerland. Id. It operates under Swiss law as an "Aktiengesellschaft," a corporation that has issued shares of common stock to investors. Id. Between May and July 2000, both Plaintiff and Ida Giordano personally executed several contractual account documents with UBS that governed the account relationship for the Swiss Account (collectively, the "Account Agreements"). The Account Agreements contain at least three provisions designating Swiss law as the governing law for the account relationship and designating Switzerland as the exclusive place of jurisdiction" for "any disputes" arising out of the account relationship. Müller Aff. Exs. B, E-F. For example, the account opening document for the Swiss Account contains the following forum-selection and choice-of-law provisions:

> The present Agreement and/or Declaration shall be exclusively governed by and construed in accordance with Swiss law. The place of performance of all obligations of both parties, the place of debt collection, the latter only for Customers domiciled outside Switzerland, as well as the exclusive place of jurisdiction for any disputes arising out of and in connection with the present Agreement and/or Declaration shall be Geneve.

Id. Ex. B at 2.

Plaintiff admits that, in years prior to 2009, she "failed to disclose [the] Swiss Account on her U.S. tax returns or pay tax on the income derived from the assets and transactions in the UBS Swiss Account." Compl. ¶ 52.  Then, in October 2009, Plaintiff, as Executrix of the Estate of Ida Giordano, participated in the IRS Offshore Voluntary Disclosure Program ("VDP"), which afforded U.S. taxpayers who had hidden foreign income from the IRS an opportunity to admit their misconduct, pay fines and penalties, and receive amnesty from criminal prosecution.  Compl. ¶ 15; see Declaration of Gabriel Herrmann ("Herrmann Decl.") Ex. 7.  Plaintiff's allegation in this case is that UBS should be held responsible for the consequences of Plaintiff's concealment of the Swiss Account from the IRS, and her eventual participation in the VDP, given that she has since "been assessed and has paid back taxes, penalties, and interest to the IRS as a result of her ownership of the UBS Swiss Accounts." Compl. ¶¶ 15-18.  The Complaint asserts that UBS "undertook a fiduciary duty" to advise the Giordanos of their U.S. tax obligations by entering into a tax treaty with the U.S. government (the Qualified Intermediary ("QI") Agreement).  Compl. ¶ 20.  Plaintiff further alleges that UBS breached its alleged fiduciary duty by failing to inform her of her U.S. tax obligations and failing to "prepare and deliver to the Plaintiff the QI agreed IRS Forms W-9 which would have

3

identified [her] as someone who either needed to pay taxes on offshore assets" or needed to "withhold" a portion of the profits of the Swiss Account.  Compl. ¶ 23.

Each year, U.S. taxpayers are required to complete an IRS Form 1040, which includes a Schedule B that must be completed if the taxpayer has (1) taxable interest or dividends from, (2) any sort of financial interest in, or (3) signature authority over, a foreign bank account.  See Herrmann Decl. Ex. 2.  Schedule B directs these taxpayers to answer the following straightforward question under penalty of perjury: "did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country?"  Id.

Taxpayers who have any such interest in or authority over a foreign account typically must also identify the location of the foreign account and complete Form TD F 90-22.1, a form better known as the Report of Foreign Bank and Financial Accounts, or "FBAR."  The FBAR's instructions provide that a taxpayer must file an FBAR if, as Plaintiff alleges here, he or she has more than $10,000 in foreign accounts.  See, e.g., id. Ex. 5 at 6.  The FBAR form also makes clear that failure to disclose may lead to severe criminal penalties.  Id. at 1

4

("Civil and criminal penalties, including in certain
circumstances a fine of not more than $500,000 and imprisonment
of not more than five years, are provided for failure to file a
report, supply information, and for filing a false or fraudulent
report.").

Plaintiff also makes reference to a Deferred
Prosecution Agreement ("DPA") UBS entered into with the U.S.
government in 2009, which acknowledged that UBS had participated
in a scheme to "facilitate the evasion of US taxes" by certain
of its accountholders.  Compl. ¶ 50.  However, the DPA does not
describe any misconduct directed at those UBS accountholders—it
concerned steps that were undertaken to assist the efforts of
certain UBS clients to conceal their income from the U.S. tax
authorities, not a scheme by UBS to trick its own customers into
committing tax violations (which would serve neither UBS's
interests nor those of its clients).  Notably, Plaintiff does
not allege that UBS was ever engaged to provide her any tax
advice, that it ever assisted her in preparing tax returns, that
it ever advised her about what to report in her tax returns, or
that it ever told her not to report the Swiss Account on her IRS
Form 1040s or FBARs.

The UBS motion was heard and marked filed fully submitted on May 13, 2015.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to

6

relief." Twombly, 550 U.S. at 557 (internal quotation marks
omitted).

**The Forum Selection Clause is Enforceable**

Courts, including the Court of Appeals for the Second
Circuit, have recognized that a party may not maintain a suit in
federal court when it has committed to litigate claims against
its contract counterparty in another jurisdiction, such as the
courts of a particular state or foreign nation.  See, e.g.,
Martinez v. Bloomberg LP, 740 F.3d 211, 219 (2d Cir. 2014)
(recognizing "a strong federal public policy supporting the
enforcement of forum selection clauses" citing Atlantic Marine
Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct.
568, 574, 187 L. Ed. 2d 487 (2013), for the proposition that,
"in all but the most unusual cases, the interest of justice is
served by holding parties to their bargain" (internal quotation
and alterations omitted)).  Since at least 1972, when the
Supreme Court issued its seminal decision in M/S Bremen v.
Zapata Off-Shore Co., forum-selection clauses "are prima facie
valid and should be enforced" absent extraordinary
circumstances.  407 U.S. 1, 10 (1972).  In Atlantic Marine, the
Supreme Court reconfirmed this principle and explained that "a
valid forum-selection clause [should be] given controlling

weight in all but the most exceptional cases." 134 S. Ct. at 581 (alteration in original) (internal quotation omitted); accord, e.g., Martinez, 740 F.3d at 219. Atlantic Marine clarified that, as a doctrinal matter, enforceability of forum-selection clauses should be analyzed under a modified version of the standard that governs forum non conveniens motions and it reaffirmed the principle that, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." 134 S. Ct. at 583.

Courts in the Second Circuit "employ a four-part analysis" in determining whether to "dismiss[] a claim based on a forum selection clause." Martinez, 740 F.3d at 217; Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). The four factors are:

> (1) whether the clause was reasonably
> communicated to the party resisting enforcement;
> (2) whether the clause is mandatory or
> permissive, i.e., whether the parties are
> required to bring any dispute to the designated
> forum or simply permitted to do so; and (3)
> whether the claims and parties involved in the
> suit are subject to the forum selection clause.
> If the forum clause was communicated to the
> resisting party, has mandatory force and covers
> the claims and parties involved in the dispute,
> it is presumptively enforceable. A party can
> overcome this presumption only by (4) making a

> sufficiently strong showing that enforcement
> would be unreasonable or unjust, or that the
> clause was invalid for such reasons as fraud or
> overreaching.

Martinez, 740 F.3d at 217 (internal quotation, citations, and

alterations omitted).  While the enforceability of the forum-

selection clause is analyzed under this federal law framework,

"courts must apply the law contractually chosen by the parties

to interpret the clause."  Martinez, 740 F.3d at 220, 224.

Thus, to the extent the language of the parties' forum-selection

clause requires interpretation, Swiss law governs matters of

contractual construction, as designated by the parties in the

Account Agreements.  See Martinez, 740 F.3d at 220.


    Plaintiff and her mother, Ida Giordano, each signed at

least three account documents containing contractual forum-

selection and choice-of-law provisions that designate

Switzerland as the "exclusive place of jurisdiction" for "any

disputes" arising out of the account relationship, and that

designate Swiss law as the law governing all such disputes, as

follows:

> The present Agreement and/or Declaration shall be
> exclusively governed by and construed in
> accordance with Swiss law. The place of
> performance of all obligations of both parties,
> the place of debt collection, the latter only for

9

> Customers domiciled outside Switzerland, as well
> as the exclusive place of jurisdiction for any
> disputes arising out of and in connection with
> the present Agreement and/or Declaration shall be
> GENEVE.

E.g., Müller Aff. Ex. B at 2.

Here, the forum-selection clause was communicated to Susan and Ida Giordano, as evidenced by their signatures immediately below the forum-selection clauses in at least three Account Agreements. See id. Ex. B, E-F. The forum-selection clauses contain operative language in boldface, underlined type, stressing that Geneva was designated as "the exclusive place of jurisdiction" for all disputes arising out of the account relationship. Id.

Also, the clause at issue is mandatory because it states that "the exclusive place of jurisdiction" for any disputes "shall be Geneve." See, e.g., Phillips, 494 F.3d at 386 ("The parties' use of the phrase 'are to be brought' establishes England as an obligatory venue for proceedings within the scope of the clause."); Müller Aff. Exs. B, E-F. "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum." Phillips, 494 F.3d at 386.

In addition, the broad, inclusive language applying the clause to "any disputes arising out of and in connection with the present Agreement" establishes that the claims and parties involved in the dispute are subject to the forum-selection clauses. See Phillips, 494 F.3d 389.

Finally, because "the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." See Phillips, 494 F.3d at 383. In the Second Circuit, that presumption cannot be rebutted unless: (1) the "incorporation [of the forum-selection clauses into the agreement] was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum [in which suit is brought]; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Phillips, 494 F.3d at 392. Plaintiff has not alleged any facts suggesting that the inclusion of the forum-selection clauses in the Account Agreements was a product of fraud or overreaching. As discussed further below, there is no public policy that weighs against enforcement of the clause. And Switzerland is a viable and

efficient forum for Plaintiff's claims, so Plaintiff would not be deprived of her day in court by enforcing the forum-selection clause. See id. Dasser Aff. ¶¶ 24-43. Plaintiff has not met the burden of alleging adequately that the mandatory forum-selection clause here should be set aside.

The Atlantic Marine Court held that enforcement of a valid forum-selection clause calls for application of a version of the federal forum non conveniens standard that is circumscribed in two critical respects. See 134 S. Ct. at 581.

When a defendant seeks to enforce a forum-selection clause, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that [litigating in] the forum for which the parties bargained is unwarranted," and Plaintiff's choice of forum "merits no weight." Id. Here, Plaintiff cannot show that there are any exceptional circumstances that would warrant setting aside the valid forum-selection clause. Because Switzerland is a viable alternative forum, Plaintiff would not be deprived of her day in court, and the relevant private and public interest factors all weigh in favor of dismissal.

12

Plaintiff does not allege that Switzerland is an inadequate forum for this dispute and Atlantic Marine in any event precludes such argument, because it explains that a "valid forum-selection clause . . . 'represents the parties' agreement as to the most proper forum.'" Id. (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 31 (1988). As explained by UBS's expert on Swiss law, the Swiss courts would accept jurisdiction of this case, would allow Plaintiff to bring claims to address the alleged misconduct described in her Complaint, and would provide Plaintiff with an efficient legal system. Dasser Aff. ¶¶ 16, 27-28; see also LaSala v. UBS AG, 510 F. Supp. 2d 213, 222-23 (S.D.N.Y. 2007) (holding Switzerland is an adequate alternative forum); Rosario Veiga v. World Meteorological Org., 486 F. Supp. 2d 297, 304-06 (S.D.N.Y. 2007) (same); Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 342 (5th Cir. 1999) (same); Brunswick GmbH v. Bowling Switz., Inc., 2008 WL 2795936, at *2 (D. Del. July 18, 2008) (same).

Moreover, in evaluating the applicable private- and public-interest factors, when a valid forum-selection clause is present the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atlantic Marine, 134 S. Ct. at 582. "As a consequence, a district court may consider arguments about public-interest factors only"—and

13

because those factors will only "rarely" overcome the parties'
designation of an exclusive forum, the "practical result" of
this analysis is that "a valid forum-selection clause should be
given controlling weight in all but the most exceptional cases."
Id. at 581-83 (internal quotation and alteration omitted).

The Supreme Court has recognized the following "public
interest" factors relevant to forum non conveniens analysis:

> [1] the administrative difficulties flowing from
> court congestion; [2] the local interest in
> having localized controversies decided at home;
> [3] the interest in having the trial of a
> diversity case in a forum that is at home with
> the law that must govern the action; [4] the
> avoidance of unnecessary problems in conflict of
> laws, or in the application of foreign law; and
> [5] the unfairness of burdening citizens in an
> unrelated forum with jury duty.

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)
(internal quotation omitted). Here, each of those factors weighs
in favor of litigation in Switzerland.

Here, Switzerland's court system is not unduly
congested such that any "administrative difficulties" would
arise if this dispute is litigated there.  A litigant can expect
timely resolution of a claim brought in Switzerland; indeed, the
average time for resolution of a civil dispute in Switzerland is

14

368 days.  Dasser Aff. ¶ 25.  According to the most recent

Federal Court Management Statistics, the median time from filing

to trial in civil cases in the Southern District of New York is

more than 32 months.  Plaintiff has not claimed that she would

be prejudiced by any supposed court congestion attendant to

litigation in Switzerland.

        This is not a "localized controversy" for which there

is any local interest in having the case decided in New York.

The vast majority of alleged facts and conduct arise in

Switzerland.  Plaintiff's account was located in Switzerland,

administered by Swiss personnel, and maintained under Swiss law,

and all transactions took place in Switzerland.  Müller Aff.

¶¶ 6, 13-14.  Thus, if this controversy is localized anywhere,

it is in Switzerland.

        Voiding the parties' forum-selection clauses would not

further any interest in having this case tried "in a forum that

is at home with the law," because the parties designated Swiss

law as the law governing any disputes arising out of the account

relationship.  Piper, 454 U.S. at 241 n.6.  Thus, it would be

more burdensome to litigate here rather than in Switzerland,

because this Court would be required to consider expert evidence

on foreign law relating to virtually all of the issues in the

15

case.  For the same reasons, dismissal would further the public interest in "avoidance of unnecessary problems in conflict of laws, or in the application of foreign law."  Id.

Finally, it would be unfair to burden the New York jury pool with a trial of Plaintiff's claims, which relate to Plaintiff's Swiss Account and alleged misconduct that would have transpired entirely in Switzerland.  New York's citizenry has little, if any, interest in this dispute, while Switzerland "possesses a strong interest in regulating the conduct of banks within its borders," LaSala, 510 F. Supp. 2d at 229, as well as conduct "involving contracts governed by its laws," Yavuz v. 61 MM, Ltd., 576 F.3d 1166, 1181 (10th Cir. 2009).

Because "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," Atlantic Marine, 134 S. Ct. at 581, and Plaintiff has not met her burden of alleging adequately that any exceptional circumstances exist here.

Plaintiff has not disputed that the governing UBS account documents contain forum selection clauses that are before the Court.  Pl.'s Ex. D; Opp. ¶¶ 9-14, 23.  Nor does she challenge the four-factor test Second Circuit courts apply in

16

deciding whether to "dismiss[] a claim based on a forum
selection clause." Martinez v. Bloomberg LP, 740 F.3d 211, 217
(2d Cir. 2014), cited in Opp. ¶ 10.  She does not contest UBS
AG's showing as to two of those factors: that "the clause is
mandatory" and "the claims and parties involved in the suit are
subject to the forum selecti[o]n clause."  Opp. ¶¶ 10-14.
Rather, she has disputed only two of the relevant factors.

        Plaintiff cannot avoid the forum selection clause by
alleging fraud relating to the contract generally; she must show
that her assent to the clause itself was fraudulently induced.
See, e.g., Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14
(1974) ("This qualification does not mean that any time a
dispute arising out of a transaction is based upon an allegation
of fraud . . . the clause is unenforceable.  Rather, it means
that a[] . . . forum-selection clause . . . is not enforceable
if the inclusion of that clause in the contract was the product
of fraud or coercion."); Mercury W. A.G., Inc. v. R.J. Reynolds
Tobacco Co., 2004 WL 421793, at *4 (S.D.N.Y. Mar. 5, 2004)
("[I]n order to invalidate the forum selection clause, the
clause itself would have to have been the product of fraud.");
Gen. Elec. Capital Corp. v. Mehta, 2002 WL 511553, at *2 n.6
(S.D.N.Y. Apr. 4, 2002) ("A party challenging a forum selection
clause on the basis of fraudulent inducement must allege facts

17

with respect to the specific clause, not the contract as a whole."). Nor does an alleged absence of negotiations concerning the forum selection clause permit Plaintiff to avoid its enforcement. See, e.g., Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V., 2010 WL 3743826, at *8 (S.D.N.Y. Sept. 24, 2010) ("Luna contends that he did not have an 'opportunity to negotiate the terms of the agreements . . . and that the agreements were presented on an as is basis.' This is not sufficient to establish fraud or overreaching.").

The Plaintiff claims the forum selection clause should not be enforced because it "was never communicated to either plaintiff or her mother." Id. ¶ 11. Although Plaintiff admits that the clause appeared on the face of the document she signed, see, e.g., id.; Pl.'s Ex. D, she claims it was not communicated to her because "[t]he UBS documents [were] complicated," the "type was in very small print," and UBS "never explained that the signing of the joint account agreement would subject me to bringing my case in Switzerland." Giordano Aff. ¶¶ 16, 21.

These assertions do not evince a failure to "reasonably communicate" the forum clause to Plaintiff. "Absent substantive unconscionability or fraud of a type not alleged here, parties are charged with knowing and understanding the

contents of documents they knowingly sign." Horvath v. Banco Comercial Portugues, S.A., 461 F. App'x 61, 63 (2d Cir. 2012) (clause was reasonably communicated to plaintiff despite his claim that it appeared in separate "terms and conditions" document he did not receive and was written in a language he did not understand); accord Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir. 1995) (clause found "in fine print" of multi-page airline ticket); Spataro v. Kloster Cruise, Ltd., 894 F.2d 44, 46-47 (2d Cir. 1990) (clause printed "in small type" on page 6 of 8-page ticket); Arial Tech., LLC v. Aerophile S.A., 2015 WL 1501115, at *3 (S.D.N.Y. Mar. 31, 2015) ("The forum selection clause . . . was reasonably communicated to Arial, as it appears on the face of the contract that Arial signed and now seeks to enforce.").

Indeed, even when such a clause does not appear in the actual document a plaintiff signs, but is merely incorporated into it by reference, courts consistently reject the contention that the clause was not "reasonably communicated" to the plaintiff. See, e.g., Horvath, 461 F. App'x at 63; Bank Leumi USA v. Ehrlich, 2015 WL 1609854, at *8 (S.D.N.Y. Mar. 23, 2015) (enforcing clause found in separate "terms and conditions" incorporated by reference into application for bank account despite plaintiff's claim that he did not receive them). The

clause at issue here was far more clearly communicated to
Plaintiff; it appears prominently in underlined type, just above
the place where Plaintiff signed the document, in a
straightforward, two-page contract that Plaintiff concedes was
made available to her.  See Pl.'s Ex. D. Plaintiff cannot now
credibly claim that the clause was not reasonably communicated
to her.  See, e.g., Martin v. Creative Mgmt. Grp., 2010 WL
2629580, at *2 (S.D.N.Y. June 29, 2010) ("The forum selection
clause was located on the signature page, in the same size type
as the rest of the Agreement.  These facts reflect notice well
beyond that required by established precedent.").

          In addition, Plaintiff attempts to overcome the
"presumption" of enforceability that attaches to the parties'
forum selection clause by arguing that enforcement "would be
unreasonable and unjust to plaintiff, who is 56 years old and
unable to travel to Switzerland . . . []or obtain counsel
there," and who supposedly would be "unable to stay in
Switzerland during a pendency of a trial."  Opp. ¶ 13.  Courts
in this Circuit routinely reject such boilerplate objections to
enforcement of a forum selection clause based on allegations of
advanced age or the supposed inconvenience of litigating abroad.
The same result is compelled here.  Indeed, Plaintiff, who
claims no special circumstances that would preclude her from

litigating in Switzerland, cites no case holding that such bare claims of inconvenience suffice to overcome a forum selection clause—and UBS AG is aware of none.

**Jurisdiction Has Not Been Adequately Alleged**

Jurisdiction over Defendant has also not been established.  With respect to general jurisdiction, Plaintiff cannot credibly deny that the Supreme Court's decision in the Daimler case fundamentally narrowed that analysis to focus on those jurisdictions where a defendant is incorporated and maintains its principal place of business—a standard that does not reach UBS AG here.  Plaintiff claims that UBS AG's reliance on Daimler is misplaced, Opp. ¶ 6, but she cites no authority for that contention.

Plaintiff also disputes the principle that "'a foreign bank is not subject to general jurisdiction . . . simply because it maintains branches here,'" id. (quoting UBS Mem. at 14), but she does not distinguish the Second Circuit precedent that has so held.  See Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014); accord AM Trust v. UBS AG, 2015 WL 395465, at *8 (N.D. Cal. Jan. 29, 2015).

21

Plaintiff's factual claims fail to adequately allege general jurisdiction.  Plaintiff asserts that "UBS AG[] is UBS Group AG," Opp. ¶ 7.  However, UBS Group AG is a holding company that holds a controlling stake in UBS AG.  See Herrmann Reply Decl. Ex. 9 at 18-19.4.  In any event, the fact that UBS Group AG, or UBS AG, has corporate affiliates that, in turn, are present in New York does not render UBS AG "at home" in New York.  Plaintiff cannot aggregate all of the forum contacts of the entire UBS family of entities and attribute them all to UBS AG and does not address UBS AG's specific contacts with the forum.  Indeed, that is precisely the sort of analysis the Daimler Court rejected because it would unfairly "stack[] the deck" in favor of jurisdiction for any foreign corporation that has an in-state affiliate.  134 S. Ct. at 759-60.

Even if the forum contacts of the entire UBS corporate family were imputed to UBS AG, it still would not suffice to establish general jurisdiction over UBS AG, because "even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 226 (2d Cir.) (quoting Daimler, 134 S. Ct. at 761), cert. denied, 134 S. Ct. 2888 (2014)).  Plaintiff's recitation of various alleged New York contacts fails to make

22

the relevant comparison compelled by Daimler, which requires
that UBS AG's in-forum contacts be "judged against" all of its
"national and global activities."  Gucci, 768 F.3d at 135
(emphasis added).  Plaintiff offers nothing to show that UBS
AG's alleged New York contacts are such a substantial portion of
its total global operations that it should be deemed to be "at
home" here.

Plaintiff fails to adequately allege specific
jurisdiction over UBS AG for purposes of this action.  The
Complaint and Opposition do not identify the specific alleged
contacts, or the account, out of which her claims arise.  None
of Plaintiff's factual assertions would suffice to show that any
of those claims arise out of any contacts UBS AG had with New
York.  If, as the Complaint initially suggested, Plaintiff's tax
liability relates to the Swiss account Ida Giordano allegedly
opened sometime in the 1980s, Compl. ¶ 13, 16, then Plaintiff's
claims must be dismissed because Plaintiff fails to identify any
contacts UBS AG ever had with New York relating to that account.

If, on the other hand, Plaintiff's claims arise out of
the account she and Ida Giordano opened in 2000, Plaintiff fails
to establish a basis for asserting specific jurisdiction because
her claims all arise out of UBS AG's alleged failure to advise

23

her of her tax reporting obligations, to provide her with an IRS
Form W-9, and to properly "administer" her IRS reporting
obligations.  See Compl. ¶¶ 23-24, 30, 36, 45, 48.  However,
Plaintiff does not claim that any of that misconduct transpired
in New York.  Plaintiff claims only that a UBS banker met with
her and her parents in New York at times to discuss their
"investment options," to collect occasional deposits, and to
socialize with them.  Giordano Aff. ¶¶ 6-13.  She admits,
however, that she and Ida Giordano traveled to Canada to open
that joint account in 2000.  Id. ¶ 14.  Moreover, she claims a
UBS banker told her that her mother's investments "would not
cause her any tax consequence with the IRS," id. ¶ 25, but does
not aver that any such alleged discussions occurred in New York.
These allegations fail to establish specific jurisdiction as a
result of "transacting business" under CPLR 302(a), and thus
surely cannot satisfy the jurisdictional demands of
constitutional due process either.  See, e.g., Siverls-Dunham v.
Lee, 2006 WL 3298964, at *10-*11 (S.D.N.Y. Nov. 13, 2006)
(finding that "a defendant may not be subject to personal
jurisdiction under CPLR § 302(a)(1) simply because her contact
with New York was a link in a chain of events giving rise to the
cause of action," and that "mere solicitation of business within
the state does not constitute the transaction of business within

the state absent some other New York-directed activities"
(citations omitted)).

**The Plaintiff's Causes of Action Are Inadequately Alleged and
Barred as Claims for Indemnification**

Finally, Plaintiff's claims are barred.  "On a motion
to dismiss under Rule 12(b)(6), a court must assess whether the
complaint 'contain[s] sufficient factual matters, accepted as
true, to state a claim to relief that is plausible on its
face.'"  N.J. Carpenters Health Fund v. Royal Bank of Scotland
Grp., 709 F.3d 109, 119-20 (2d Cir. 2013) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009)).  Plaintiff's Complaint fails
to satisfy this standard for any of the claims alleged.
Plaintiff's Complaint is one of a series of cases brought by
former UBS accountholders seeking to hold UBS responsible for
their own tax fraud.  See, e.g., Thomas, 706 F.3d 846; Olenicoff
v. UBS AG, 2012 WL 1192911, at *1 (C.D. Cal. Apr. 10, 2012).
UBS has acknowledged its role in facilitating U.S. clients'
concealment of their accounts from the IRS but denies that it
defrauded those clients.  As the Complaint has alleged,
Plaintiff's theory of the case is that UBS facilitated its
clients' own knowing concealment of their Swiss accounts from
the IRS.  See, e.g., Compl. ¶ 50 (alleging that UBS

25

"participat[ed] in a scheme to facilitate the evasion of US

taxes" by its clients and was "actively assisting or otherwise

facilitating a number of U.S. individual taxpayers in

establishing accounts at UBS in a manner designed to conceal the

U.S. taxpayers' ownership or beneficial interest in said

accounts," thereby "allowing such U.S. taxpayers to evade

reporting requirements").

     In dismissing a similar claim, the court in Olenicoff

v. UBS AG explained that UBS "only admitted to assisting willing

clients with tax fraud, not forcing unsuspecting clients into

tax evasion.  While its argument is ironic, UBS is right.  Even

assuming that UBS gave Olenicoff fraudulent tax advice, that

makes UBS a co-conspirator, not a defendant in this litigation."

2012 WL 1192911, at * 1.  Similarly, in affirming the dismissal

of Thomas v. UBS AG on appeal, Judge Posner, writing for the

Seventh Circuit, explained the absurdity of the claim, stating

that "[t]he plaintiffs are tax cheats, and it is very odd, to

say the least, for tax cheats to seek to recover their penalties

. . . from the source, in this case UBS, of the income concealed

from the IRS."  706 F.3d at 850.  Judge Posner went on to call

the Thomas negligence and malpractice claims "frivolous

squared," and admonished plaintiffs that "[t]his lawsuit,

including the appeal, is a travesty.  We are surprised that UBS

26

hasn't asked for the imposition of sanctions on the plaintiffs and class counsel." Id. at 854.

New York's "fundamental concept[]" of in pari delicto, which "has been wrought in the inmost texture of [New York] common law for at least two centuries," bars Plaintiff's claims, which all amount to an attempt to seek reimbursement from UBS for the consequences of her own filing of false tax returns. Kirschner v. KPMG LLP, 15 N.Y.3d 446, 464 (2010). Even assuming for purposes of this motion to dismiss that Plaintiff's allegations of UBS's wrongdoing are correct, "[t]he doctrine of in pari delicto mandates that the courts will not intercede to resolve a dispute between two wrongdoers." Id. As the New York Court of Appeals has explained, "the principle that a wrongdoer should not profit from his own misconduct is so strong in New York" that it should apply even "where both parties acted willfully" and "in difficult cases," and it "should not be 'weakened by exceptions.'" Id.

In addition, Plaintiff's concealment of her Swiss Account from the IRS prevents her from making a prima facie showing of causation for any of her claims, because on the face of her allegations, her own conduct is responsible for any harm she allegedly suffered. See, e.g., Rothstein v. UBS AG, 708

27

F.3d 82, 97 (2d Cir. 2013) (affirming dismissal of complaint because the plaintiff's "conclusory allegations [did] not meet Twombly's plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs"); Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1496 (2d Cir. 1992) (holding complaint was properly dismissed because the plaintiff failed to "adequately allege that the damages it suffered were proximately caused by the alleged misrepresentations").

Plaintiff has asserted five causes of action: (1) breach of fiduciary duty; (2) malpractice/negligence; (3) breach of contract or in the alternative, unjust enrichment; (4) declaratory relief for equitable disgorgement of profits; and (5) fraud and constructive fraud.  Plaintiff's own admitted failure to report her UBS Account and income to the IRS prevents her from establishing the required element of causation for each of those causes of action, particularly given the absence of any factual allegation that UBS advised Plaintiff not to report the Swiss Account on her tax returns or was in any way assisted with the preparation of Plaintiff's tax returns.  Plaintiff has not alleged any conduct on the part of UBS that was the proximate cause of Plaintiff's purported injury—namely, the obligation to

28

pay back taxes, penalties, and interest as part of her participation in the VDP.  Plaintiff admits that she "failed to disclose [her] UBS Swiss Account on her U.S. tax returns or pay tax on the income derived from the assets and transactions in the UBS Swiss Account."  Compl. ¶ 52.  This means that she falsely answered "no," under penalty of perjury, to a straightforward question on Schedule B of her Form 1040: "did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country?"  Herrmann Decl. Ex. 2.  She has not alleged that UBS told her to answer "no" to that question.  She claims UBS should reimburse her for her tax penalties because it failed to prevent her from violating the law. That theory has no legal support.  See, e.g., Thomas, 706 F.3d at 851 (there is "no common law duty to prevent another person from violating the law").

Plaintiff's own failure to disclose the Swiss Account to the IRS is an insurmountable barrier to proving causation for all of her claims, and it bars recovery under the fundamental doctrine of in pari delicto.  Thus, even if all facts alleged are taken as true, Plaintiff fails to state a claim, and the entire Complaint should be dismissed under Rule 12(b)(6).

Plaintiff's Opposition fails to address that the principle of in pari delicto prevents her from recovering damages relating to her own participation in a scheme to avoid paying taxes. Even accepting arguendo Plaintiff's allegation that a UBS representative told her she would not have to pay taxes on the income from her account, does not explain why she would conceal the existence of the account.

Plaintiff's failure to disclose her foreign account therefore precludes her from suing UBS AG for damages resulting from her own misconduct. "The doctrine of in pari delicto mandates that the courts will not intercede to resolve a dispute between two wrongdoers." Kirschner v. KPMG LLP, 15 N.Y.3d 446, 464 (2010). This "fundamental concept" of New York law holds that a "wrongdoer should not profit from his own misconduct," even "where both parties acted willfully." Id. Plaintiff fails to address (or even acknowledge) that settled principle, but she simply cannot hold UBS AG responsible for her own failure to meet her tax obligations.

Plaintiff's eventual participation in the Voluntary Disclosure Program—and the back taxes and penalties she paid as a result—arose because she had filed false tax returns denying that she had an interest in foreign accounts when she knew that

30

she did.  Even taking the Plaintiff's allegations as true, the
Complaint fails to satisfy the basic Rule 8(a) standard of
stating a claim that is plausible on its face or the heightened
Rule 9(b) standard for pleading fraud.  Plaintiff has not
alleged any facts that would relieve her of her own culpability
for knowingly filing false tax returns, which is fatal to all of
her claims.

Moreover, each of Plaintiff's claims suffers from
other fatal deficiencies.  The fraud claim fails because
Plaintiff cannot establish reasonable reliance, see, e.g., N.Y.
City Educ. Constr. Fund v. Verizon N.Y. Inc., 114 A.D.3d 529,
530 (1st Dep't 2014) (no reliance by plaintiff who "fail[ed] to
use ordinary intelligence to ascertain the truth of defendant's
representations"), and because she fails to allege specific
facts—such as when and where misrepresentations were made—with
particularity under Rule 9(b), see, e.g., DeBlasio v. Merrill
Lynch & Co., 2009 WL 2242605, at *14 (S.D.N.Y. July 27, 2009).
The fiduciary duty claim sounds in fraud—it alleges that UBS
AG's knowingly "failed to inform the Plaintiff" of her tax
obligations, compl. ¶ 24—and thus fails for the same reasons.
See, e.g., id. at *10.  The "malpractice/negligence" claim is
barred by the economic-loss rule, County of Suffolk v. Long
Island Lighting Co., 728 F.2d 52, 62 (2d Cir. 1984), and because

UBS cannot be liable for "malpractice" here, see, e.g., Deutsche Bank Sec., Inc. v. Rhodes, 578 F. Supp. 2d 652, 670 (S.D.N.Y. 2008). The contract claim fails because it does not identify any contract provision that UBS AG breached. See, e.g., 767 Third Ave. LLC v. Greble & Finger, LLP, 8 A.D.3d 75, 75 (1st Dep't 2004). The disgorgement claim fails because it seeks a remedy that is available only to the SEC—not to private litigants. See, e.g., SEC v. Wyly, 2014 WL 3739415, at *7 (S.D.N.Y. July 29, 2014).

The Plaintiff has failed to adequately allege her five causes of action.

**Conclusion**

Based on the conclusions set forth above, the motion of UBS is granted, and the complaint is dismissed. In view of the enforcement of the forum selection clause leave to re plead is not granted.

It is so ordered.

New York, NY
September 2⟩, 2015

ROBERT W. SWEET
U.S.D.J.

32